UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Louis Motley, Tiviea Moore, Greg Brooks,
Debra Lathan, and Gary Ritzenthaler,
individually, and on behalf of all others
similarly situated,

                  Plaintiffs,

                                      Civ. No. 08-339 (RHK/AJB)
                                      **MEMORANDUM OPINION
                                      AND ORDER**

v.

Homecomings Financial, LLC f/k/a
Homecomings Financial Network, Inc.,

                  Defendant.

---

Craig L. Briskin, Steven A. Skalet, Mehri & Skalet, PLLC, Washington, DC, Susan M. Coler, Sprenger & Lang, PLLC, Minneapolis, Minnesota, Steven M. Sprenger, Sprenger & Lang, PLLC, Washington, DC, for Plaintiffs.

Jan T. Chilton, Mark J. Kenney, John B. Sullivan, Severson & Werson, PC, San Francisco, California, Lawrence R. King, Michael J. Steinlage, Caryn A. Boisen, Larson King, LLP, St. Paul, Minnesota, for Defendant.

---

**INTRODUCTION**

The plaintiffs in this purported class action are mortgagors whose mortgages were (or are) serviced by Defendant Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc. ("Homecomings"). Plaintiffs allege that Homecomings has imposed improper fees, costs, and charges on their mortgage accounts, and as a result has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). Plaintiffs also allege

several claims arising under state law. Homecomings now moves to dismiss. For the reasons set forth below, the Court will grant Homecomings' Motion in part and deny it in part.

## BACKGROUND

Plaintiffs are residents of Illinois, California, Kentucky, Florida, and Michigan. (Compl. ¶¶ 17-21.) Each is a mortgagor under a variable-rate mortgage securing his or her home that is serviced by Homecomings. (Id.) Homecomings is a Minneapolis-based company that purports to service more than 800,000 mortgages nationwide. (Id. ¶ 22.)

According to Plaintiffs, Homecomings has engaged in a scheme to increase its profits by charging and collecting fees not authorized by Plaintiffs' loan documents or by applicable law. (Id. ¶ 44.) The Complaint recites several examples of Homecomings' purportedly improper conduct. Plaintiff Louis Motley alleges that Homecomings "force-placed" insurance on his home and charged the premium to him even though he had homeowner's insurance already in place. (Id. ¶ 45.) He also alleges that Homecomings charged him excessive late fees. (Id. ¶ 48.) Plaintiff Debra Lathan alleges that Homecomings often loses payments and fails to process them in a timely manner, requiring the payment of "Speedpay" fees of up to $12.50 for expedited processing, in order to avoid late fees. (Id. ¶ 46.) Plaintiff Greg Brooks alleges that he was improperly charged six "property-inspection" fees in a 10-day period in November 2006; such fees purportedly were incurred in order for Homecomings to verify that someone was actually living in his residence. (Id. ¶ 47.)

As a result of the foregoing, Plaintiffs allege that Homecomings has violated the FDCPA (Count I), the TILA (Count II), and the unfair- and deceptive-practices statutes (which Plaintiffs refer to as "UDAP laws") of California, Florida, Illinois, Kentucky, Michigan, and Minnesota (Count III). Plaintiffs also allege claims for breach of contract (Count IV), unjust enrichment (Count V), declaratory relief (Count VI), and an accounting (Count VII). Homecomings now moves to dismiss.

## STANDARD OF DECISION

The recent Supreme Court case of Bell Atlantic Co. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." Id. at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual

allegations contained therein. Id. Accordingly, a well-pleaded complaint can survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted).[1]

## ANALYSIS

**I.  Homecomings' generic Twombly argument fails.**

Homecomings first argues that Plaintiffs' entire Complaint should be dismissed under Twombly because "it fails to allege sufficient facts to make any of its claims plausible." (Def. Mem. at 8.) In particular, it argues that the Complaint "fails to allege sufficient facts to show why or how Homecomings breached any contractual obligation or violated any law" and "leaves both the Court and Homecomings to guess as to the factual basis for plaintiffs' claims." (Id. at 8, 10.) The Court does not agree.

Without reciting all of the factual allegations contained in the Complaint, suffice it to say that the nature of each of Plaintiffs' claims has been sufficiently articulated such that Homecomings (and the Court) need not "guess" exactly what it is Plaintiffs are alleging. For example, the FDCPA claim makes clear that Homecomings purportedly violated that statute by seeking to recover fees and other charges not permitted by law or by Plaintiffs' loan documents, such as Motley being charged "four times the allowable

---

[1] The Court rejects Plaintiffs' argument that the Twombly standard is limited to claims alleging antitrust conspiracies. (See Mem. in Opp'n at 2-3.) The Eighth Circuit has cited Twombly when reviewing motions to dismiss in, *inter alia*, a state-law securities-fraud case, Benton v. Merrill Lynch & Co., 524 F.3d 866, 870 (8th Cir. 2008), an ERISA case, Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008), and a case arising under the Medicare Secondary Payer statute, Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). Clearly, Twombly's reach is not as limited as Plaintiffs suggest. See also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3rd Cir. 2008) ("we decline . . . to read Twombly so narrowly as to limit its holding . . . to the antitrust context").

late fee on one monthly statement." (Compl. ¶¶ 48, 55.) Similarly, the UDAP claim alleges that charging and collecting these fees violated various state consumer-protection statutes. (Id. ¶ 66(a).) Simply put, the Court does not believe that the Complaint is defective *in its entirety* for failing to allege sufficient facts to support Plaintiffs' claims (although it does find that *certain* claims are insufficiently pleaded, as set forth below). Generally speaking, the Complaint contains "sufficient factual information to provide the 'grounds' on which the claim[s] rest." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citation omitted). That is all that is required. Id.

## II.     The FDCPA claim will be dismissed.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In order to establish a violation of the FDCPA, Plaintiffs must, as a threshold matter, demonstrate that Homecomings is a "debt collector." See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103, 2007 WL 2695795, at *2 (D. Minn. Sept. 12, 2007) (Kyle, J.). The statute defines the term "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, "a debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Thulin v. EMC Mortgage Corp., Civ. No. 06-3514, 2007 WL 3037353, at *5 (D. Minn. Oct. 16,

2007) (Kyle, J.) (emphasis added) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)); accord Conklin v. Purcell, Krug & Haller, No. 1:05-CV-1726, 2007 WL 404047, at *5 (M.D. Pa. Feb. 1, 2007) (collecting cases); Scott v. Wells Fargo Home Mortgage, Inc., 326 F. Supp. 2d 709, 718 (E.D. Va. 2003).

Homecomings argues that the FDCPA claim here (Count I) must be dismissed because it acted as a mortgage servicer at all times relevant to the claims in the Complaint and, hence, it is not a "debt collector" under the statute. (Def. Mem. at 11-12.) The Court agrees. Plaintiffs have specifically alleged that Homecomings was servicing their mortgages when it attempted to collect (or did collect) the allegedly unauthorized and unlawful fees and other charges it imposed on Plaintiffs' mortgage accounts. (See Compl. ¶¶ 17-21.) Accordingly, Homecomings is not a "debt collector" subject to the FDCPA, and Count I fails as a matter of law.

Plaintiffs apparently recognize this fatal defect in their FDCPA claim, as they concede in their Memorandum in Opposition that Homecomings' argument "might have merit." (Mem. in Opp'n at 2 n.1.) They argue, however, that Homecomings "would be a debt collector for [mortgages] transferred to it [for servicing] in a default status. Since there has been no discovery to date on this issue, dismissal of Count I at this time would be premature." (Id.) The Court rejects this argument. Under Twombly, Plaintiffs cannot simply hope that discovery will uncover facts indicating some of their mortgages were transferred to Homecomings in a default status. 127 S. Ct. at 1968 (complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery"). Rather, Plaintiffs are required to plead facts that

would, if proved, establish their entitlement to relief on their FDCPA claim; in other words, they must plead facts establishing that Homecomings is a "debt collector" within the meaning of the Act. Insofar as they have not done so, their FDCPA claim fails.[2]

### III. The TILA claim survives.

In Count II, Plaintiffs allege that Homecomings violated 12 C.F.R. § 226.20(c)(4), which was promulgated by the Federal Reserve Board pursuant to the TILA as part of "Regulation Z." Section 226.20(c)(4) requires a lender to disclose, among other things, the loan balance when the interest rate changes on a variable-rate loan. According to Plaintiffs, "Homecomings' disclosures state loan balances that are higher than they would have been but for Homecomings' improper charges," and hence violate the regulation. (Compl. ¶ 61.) Homecomings moves to dismiss this claim on two grounds, but neither is persuasive.[3]

First, Homecomings argues that Plaintiffs lack standing to assert this claim because "the [C]omplaint does not allege that any named [P]laintiff received one of the

---

[2] That Plaintiffs have pleaded "Homecomings . . . is a debt collector" (Compl. ¶ 49) is of no moment. Plaintiffs must do more than plead legal conclusions; they must plead *facts* sufficient to establish that Homecomings is a debt collector. Twombly, 127 S. Ct. at 1964-65.

[3] At the outset, Plaintiffs have nowhere explained how the addition of allegedly unauthorized fees or charges to their mortgage balances resulted in interest-rate adjustments, which is what triggers the disclosure requirements of 12 C.F.R. § 226.20(c). Nevertheless, at least one court has held that allegations similar to those made by Plaintiffs here are sufficient to state a TILA claim. See Chatman v. Fairbanks Capital Corp., No. 02 C 665, 2002 WL 1338492, at *5 (N.D. Ill. June 18, 2002) (imposition of unwarranted "property preservation fees" on plaintiffs' mortgage balances sufficient to state TILA claim); see also Vician v. Wells Fargo Home Mortgage, No. 2:05-CV-144, 2006 WL 694740, at *5 (N.D. Ind. Mar. 16, 2006) (concluding that plaintiffs had failed to state claim under 12 C.F.R. § 226.20(c) due to mortgage servicer force-placing insurance and inflating plaintiffs' loan balances to recoup costs thereof, but nevertheless holding that plaintiffs had stated a viable claim under 12 C.F.R. § 226.18); Travis v. Boulevard Bank N.A., 880 F. Supp. 1226, 1229-30 (N.D. Ill. 1995) (same).

allegedly defective variable rate disclosures." (Def. Mem. at 13.) Homecomings is correct that no Plaintiff has *expressly* alleged that he or she received a disclosure with an inflated loan balance. Yet, when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must be liberally construed and all reasonable inferences from its pleaded facts must be drawn in the plaintiff's favor. Twombly, 127 S. Ct. at 1964-65. Here, the Court can reasonably *infer* from the facts pleaded that Plaintiffs have, indeed, received such defective disclosures. (See Compl. ¶ 50 ("Homecomings fails to provide accurate variable rate disclosures because its imposition of improper fees renders its disclosures inaccurate"); id. ¶ 61 ("Homecomings' disclosures state loan balances that are higher than they would have been but for Homecomings' improper charges.").)[4]

Second, Homecomings argues that Plaintiffs have failed to allege any actual harm flowing from its purported TILA violations. According to Homecomings, Plaintiffs must plead that Homecomings proximately caused them damages in order for them to state a TILA claim. (Def. Mem. at 14-15.) While the failure to plead causation might be relevant if Plaintiffs were seeking only *actual* damages, such a failure is of little aid to Homecomings because Plaintiffs also seek *statutory* damages. (See Mem. in Opp'n at 10-11; Compl. at 18 (prayer for "statutory damages and penalties").) Such damages are available under the TILA even in the absence of actual damages. See 15 U.S.C. § 1640(a)(2); Dryden v. Lou Budke's Arrow Fin. Co., 661 F.2d 1186, 1191 (8th Cir.

---

[4] In any event, even if Plaintiffs had failed in this regard, such a defect could be (and perhaps should be) easily rectified in an Amended Complaint.

8

1981) ("TILA plaintiffs . . . need not show that they sustained actual damages stemming from the TILA violations before they may recover the statutory damages provided.").

Homecomings argues in its Reply, however, that Plaintiffs cannot obtain statutory damages in this case. In support, it cites a portion of Section 1640(a)(4), which states in pertinent part: "In connection with the disclosures referred to in section 1638 of this title, a creditor shall [be subject to statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the 'amount financed'), (3), (4), (5), (6), or (9) of section 1638(a) of this title." Seizing on this language, Homecomings argues a court may award statutory damages only when either Section 1635 or Section 1638(a)(2), (3), (4), (5), (6), or (9) has been violated. (Reply at 9.) Because Plaintiffs here allege a violation of Regulation Z and not 15 U.S.C. § 1635 or § 1638, Homecomings argues that Plaintiffs cannot obtain statutory damages. (Id.) This argument turns the language of Section 1640 on its head.

Section 1640 states, in pertinent part, that "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part" is liable for, *inter alia*, statutory damages. 15 U.S.C. § 1640(a). Section 1640(a) makes clear, therefore, that statutory damages are available in *all* cases, subject to certain limitations. Homecomings relies upon one such limitation, but that limitation applies only "in connection with the disclosures referred to in section 1638," id. § 1640(a)(4), and Plaintiffs' claim is not based on Homecomings' failure to make such disclosures (which must occur before a credit transaction is consummated, see 15 U.S.C. § 1638(b)(1)). Rather, they assert that Homecomings has violated disclosure

9

requirements found *in Regulation Z* (see Compl. ¶ 60), which must be made <u>after</u> a loan has occurred. See 12 C.F.R. § 226.20. Accordingly, the limitation in Section 1640(a)(4) relied upon by Homecomings does not preclude Plaintiffs from seeking an award of statutory damages.[5]

For these reasons, the Court will not dismiss Count II.

**IV.  The UDAP claim is insufficiently pleaded.**

Homecomings next argues that Plaintiffs have failed to sufficiently plead their UDAP claim (Count III). The Court agrees.

Homecomings correctly notes that UDAP claims typically are subject to the strictures of Federal Rule of Civil Procedure 9(b). <u>See, e.g.</u>, <u>Carlson v. A.L.S. Enters., Inc.</u>, Civ. No. 07-3970, 2008 WL 185710, at *2 n.4 (D. Minn. Jan. 18, 2008) (Kyle, J.) (collecting cases). Rule 9(b) requires a plaintiff to plead with particularity "the circumstances constituting fraud, including such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." <u>Id.</u> at *2 (citing <u>BJC Health Sys. v. Columbia Cas. Co.</u>, 478 F.3d 908, 917 (8th Cir. 2007)). In other words, a complaint must

---

[5] While the Court rejects Homecomings' argument concerning the limitation in Section 1640(a)(4), it pauses to note that it is not entirely clear that statutory damages are available for a claim alleging a violation of Regulation Z. Section 1640(a) expressly states that statutory damages are available when a creditor "fails to comply with any requirement *imposed under this part*." (emphasis added). "This part" refers to Part B of Chapter 41 of Title 15 of the United States Code, *i.e.*, 15 U.S.C. §§ 1631-1649; no mention is made in those statutory sections of Regulation Z. Because Homecomings has nowhere raised this argument, however, the Court will not address it.

identify the "who, what, where, when, and how" of the alleged fraud.  <u>United States ex rel. Costner v. URS Consultants, Inc.</u>, 317 F.3d 883, 888 (8th Cir. 2003).[6]

Here, while the Complaint contains some of the necessary information – such as the "who" – it falls short of Rule 9(b)'s heightened pleading requirement.  For example, the Complaint contains no allegations concerning when the allegedly unlawful fees or charges were imposed by Homecomings.  Such information is vital, insofar as certain of Plaintiffs' claims may be barred by statutes of limitations.  Furthermore, the Complaint lacks sufficient detail concerning the "what" and the "how" of Homecomings' allegedly improper conduct.  It alleges, for instance, that Plaintiff Lathan has incurred "Speedpay" fees for expedited processing of her payments, yet it nowhere specifies whether Lathan's payments were among those purportedly "lost" by Homecomings or processed in a dilatory fashion.  In the absence of such allegations, Homecomings (and the Court) are left to speculate whether such fees truly were imposed improperly or, instead, were incurred by Lathan because, through no fault of Homecomings, she was going to be late with certain of her monthly payments.  Nothing in the Complaint suggests that the imposition of "Speedpay" fees under those circumstances would be improper.

Similarly, the Complaint alleges that Plaintiff Brooks was assessed six property-inspection fees in a ten-day span without notice that his property was being inspected or

---

[6] Plaintiffs argue that Rule 9(b) should not apply because the gravamen of their UDAP claim "is not fraud, but misrepresentation or simply unfair practices." (Mem. in Opp'n at 13.)  The Court disagrees.  Plaintiffs' UDAP claim sounds in fraud – they allege that Homecomings charged illegal and improper fees with the nefarious intent of artificially inflating its profits and putting borrowers into default. (Compl. ¶ 4.)  Moreover, several of the statutes they invoke are aimed at deterring fraudulent conduct. (<u>See</u> Compl. ¶ 68 (alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Minnesota Prevention of Consumer Fraud Act).)

an explanation from Homecomings as to why such inspections were necessary.  Yet, in the absence of facts pleaded in the Complaint indicating that Homecomings was obligated by Brooks's loan documents to provide notice or to explain the necessity for the inspections, there is nothing *per se* fraudulent about this conduct.

Plaintiffs rely on Carlson in support of their contention that the UDAP claim has been properly pleaded, but Carlson is distinguishable.  Although this Court recognized in Carlson that a complaint need not "be suffused with every minute detail . . . in order for Rule 9(b) to be satisfied," 2008 WL 185710, at *3, the Complaint there contained significantly more detail than Plaintiffs' Complaint here, including some indication of the timing of the defendants' alleged misrepresentations and sixteen specific examples of allegedly fraudulent statements the defendants had made.  Id. at *3-4.  Although Plaintiffs have not, as Homecomings argues, completely failed to "plead[] *any* specific fact" in the Complaint (Reply at 13 (emphasis added)), the Court determines that Plaintiffs have failed to plead the UDAP claim with sufficient particularity, and it will be dismissed.[7]

## V.     The breach-of-contract claim must be dismissed.

In Count IV, Plaintiffs allege that Homecomings has imposed and collected fees and charges not authorized by Plaintiffs' mortgage-loan documents and, as a result, has

---

[7] Homecomings also argues that Plaintiffs' UDAP claim must be dismissed to the extent it is predicated on a violation of the California Legal Remedies Act, Cal. Civ. Code §§ 1750-84 (the "CLRA").  According to Homecomings, California state courts have held that the CLRA does not apply to home-mortgage loans.  (Def. Mem. at 16 (citing cases).)  Yet, several decisions emanating from federal courts in California have reached the opposite conclusion.  See, e.g., Hernandez v. Hilltop Fin. Mortgage, Inc., No. C06-7401, 2007 WL 3101250, at *6 (N.D. Cal. Oct. 22, 2007); Jefferson v. Chase Home Fin. LLC, No. C06-6510, 2007 WL 1302984, at *2-3 (N.D. Cal. May 3, 2007).  Because the Court concludes that the UDAP claim must be dismissed as insufficiently pleaded under Rule 9(b), it need not resolve this issue at this juncture.

"breached its contracts with the Plaintiffs." (Compl. ¶¶ 73-75.) A plaintiff alleging a claim for breach of contract must plead, among other things, (1) the existence of a contract between the plaintiff and the defendant and (2) the defendant's breach of one of the contract's terms. E.g., Mandel v. Americana Cmty. Bank, No. A03-500, 2004 WL 117563, at *1 (Minn. Ct. App. Jan. 27, 2004).[8] Plaintiffs have not attached the allegedly violated contracts to the Complaint, nor have they pleaded the terms of those contracts, rendering it impossible to discern precisely how Homecomings allegedly has breached them.

By way of example, as discussed above, Plaintiff Brooks alleges that he was assessed six property-inspection fees in a 10-day period in November 2006. (Compl. ¶ 47.) There are no facts pleaded in the Complaint, however, indicating that the imposition of such fees somehow violated Brooks's mortgage-loan documents. He simply asserts that such fees were "unnecessary" and were imposed without notice or explanation, but he fails to cite any contract term that Homecomings purportedly breached when such fees were charged. The same is true with the purportedly unwarranted "Speedpay" fees charged to Plaintiff Lathan (id. ¶ 46) and the alleged force-placing of insurance on Plaintiff Motley's home (id. ¶ 45); the Complaint is devoid of the factual detail necessary to establish that these actions constituted breaches. In the absence of such factual allegations, Count IV is defective.

---

[8] No party has addressed whether Minnesota law or the law(s) of some other state(s) governs the breach-of-contract claim. Accordingly, the Court assumes that Minnesota law applies. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

The flaw in Plaintiffs breach-of-contract claim was perhaps best laid bare at oral argument. There, Plaintiffs asserted for the first time that Homecomings' actions were sufficient to breach the implied covenant of good faith and fair dealing in their mortgage contracts, even though the Complaint makes no mention of the implied covenant. The Court will not allow the Complaint to be a moving target; Homecomings is entitled to know the precise nature of Plaintiffs' breach-of-contract claim (and other claims).

Simply put, Plaintiffs were required to plead sufficient facts to demonstrate why and how Homecomings allegedly breached its contracts with Plaintiffs; it is not enough for them to simply recite the magic word "breach" in order to avoid dismissal. Twombly, 127 S. Ct. at 1974. Because Plaintiffs have not done so, the breach-of-contract claim will be dismissed.[9]

## VI.   The unjust-enrichment claim may stand.

In Count V, Plaintiffs allege that Homecomings has been unjustly enriched by collecting fees and charges not authorized by law or by Plaintiffs' mortgage documents. Homecomings argues that this claim must be dismissed because express contracts – Plaintiffs' mortgage-loan contracts – govern the relationship between Plaintiffs and Homecomings. (Def. Mem. at 17-19.) However, as noted above (see note 9, supra), it

---

[9] Furthermore, the Complaint leaves it uncertain whether Homecomings is even a party to the mortgage contracts signed by Plaintiffs. Plaintiffs have alleged that Homecomings "serviced" their mortgages (Compl. ¶¶ 17-21), but the import of that allegation is unclear – it appears that the mortgages were originated by other companies and then "farmed out" to Homecomings (id. ¶¶ 22, 40). Certainly, Plaintiffs can maintain a breach of contract claim against Homecomings if the originating lenders assigned their rights and obligations under the mortgage contracts to Homecomings. Yet, if Homecomings is merely *servicing* contracts on behalf of the original lenders – that is, collecting payments, issuing statements, etc. – without actually being a party to the contracts themselves, it is unclear whether it could be held liable for breach.

cannot be readily discerned from the Complaint whether Homecomings is a party to Plaintiffs' mortgage contracts.  Moreover, Plaintiffs may plead their unjust-enrichment claim in the alternative to their breach-of-contract claim without fear of dismissal.  See Fed. R. Civ. P. 8(d)(2); Masterson Pers., Inc. v. McClatchy Co., Civ. No. 05-1274, 2005 WL 3132349, at *7 (D. Minn. Nov. 22, 2005) (Kyle, J.).  Dismissal of the alternatively pleaded unjust-enrichment claim, therefore, would be inappropriate.

**VII.   The claims for declaratory judgment and accounting will be dismissed.**

Finally, Homecomings argues that Count VI (seeking (1) a declaratory judgment that Homecomings' conduct is unlawful and (2) an injunction enjoining such conduct) and Count VII (seeking an accounting) should be dismissed because these are merely remedies, not separate causes of action. (Def. Mem. at 19.)  Plaintiffs concede the point in their Memorandum in Opposition.  (Mem. in Opp'n at 22.)  Accordingly, the Court will dismiss Counts VI and VII as separate claims, although it will continue to permit Plaintiffs to seek such equitable remedies in connection with the other claims in the Complaint.  (See Compl. at 18 (prayer for relief seeking, *inter alia*, accounting, declaratory judgment, and injunctive relief).)

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. No. 13) is **GRANTED IN PART** and **DENIED IN PART**.  Counts I, III, and IV of Plaintiffs' Complaint are **DISMISSED WITHOUT PREJUDICE**, and Counts VI and VII are **DISMISSED WITH PREJUDICE**.  Plaintiffs may file an Amended Complaint in an attempt to correct the

deficiencies outlined above in Counts I, III, and IV within 30 days of the date of this Order.[10]

Date: May 30, 2008

                                                s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge

---

[10] Any claims asserted in an Amended Complaint must be "warranted by existing law" and any factual contentions therein must either have evidentiary support or be likely to have such support after discovery. Fed. R. Civ. P. 11(b)(2), (4). Furthermore, the Court assumes counsel recognizes that although certain of the claims in the Amended Complaint must be pleaded with particularity, that does not grant Plaintiffs license to make such a pleading prolix or unnecessarily lengthy. See Fed. R. Civ. P. 8(a)(2) (complaint should include a "short and plain statement of the claim showing that the pleader is entitled to relief"); Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (Rule 9(b)'s requirements must be read "in harmony with the principles of notice pleading" under Rule 8).

16